UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOMAS WILSON, DONALD P. TWOHIG, DONALD D. TWOHIG and THOMAS SHANNAHAN, Plaintiffs | : | |
| vs. | : | C.A. No. 03-575L |
| CHARLES D. MOREAU, in his individual capacity and in his capacity as agent for the City of Central Falls; JOHN P. KUZMISKI, in his capacity as finance director and treasurer of the City of Central Falls; RICHARD B BESSETTE, individually and in his capacity as agent for the City of Central Falls; MARTIN JOYCE, Individually and in his capacity as Acting Personnel Specialist of the City of Central Falls; RAYMOND COONEY, individually and in his capacity as City Solicitor of the City of Central Falls; ALBERTO CARDONA, individually and in his capacity as agent for the City of Central Falls; KEVIN GUINDON, individually and in his capacity as a Central Falls Police Officer; MARK BRAYALL, Individually and in his capacity as a Central Falls Police officer Defendants | : | |

**OBJECTION OF PLAINTIFFS DONALD P. TWOHIG, DONALD D. TWOHIG AND THOMAS SHANNAHAN TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Donald P. Twohig, Donald D. Twohig and Thomas Shannahan herewith object to Defendants' Motion for Summary Judgment and file their Memorandum of Law and Statement of Issues concurrently.

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THOMAS WILSON, DONALD P. TWOHIG, DONALD D. TWOHIG and THOMAS SHANNAHAN,
Plaintiffs

vs. C.A. No. 03-575L

CHARLES D. MOREAU, in his individual capacity and in his capacity as agent for the City of Central Falls; JOHN P. KUZMISKI, in his capacity as finance director and treasurer of the City of Central Falls; RICHARD B BESSETTE, individually and in his capacity as agent for the City of Central Falls; MARTIN JOYCE, Individually and in his capacity as Acting Personnel Specialist of the City of Central Falls; RAYMOND COONEY, individually and in his capacity as City Solicitor of the City of Central Falls; ALBERTO CARDONA, individually and in his capacity as agent for the City of Central Falls; KEVIN GUINDON, individually and in his capacity as a Central Falls Police Officer; MARK BRAYALL, Individually and in his capacity as a Central Falls Police officer,
Defendants

**MEMORANDUM OF LAWIN SUPPORT OF THE OBJECTION OF PLAINTIFFS DONALD P. TWOHIG, DONALD D. TWOHIG AND THOMAS SHANNAHAN TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Donald P. Twohig, Donald D. Twohig and Thomas Shannahan herewith file their Memorandum of Law In Support of Their Objection to Defendants Motion For Summary Judgment.

Plaintiffs above hereby adopt and incorporate by reference the arguments contained in the Memorandum of Law filed by Plaintiff Thomas Wilson in support of his objection to Defendants Motion for Summary Judgment.

## *Background*

It is not surprising that Defendants have filed their Motion for Summary Judgment based on minutia and completely ignoring the very obvious fact that the core facts remain in dispute. This case is about a newly elected mayor run amok, adopting a policy of harassing and punishing those he believed were against him because of their nonaffiliation with his political organization. Defendants obviously disagree. Thus, the core and critical issues are in continued and obvious dispute and need to be resolved by a jury.

All of the causes of action in this case trace back to the conduct of Defendant Moreau and his associates. Mostly at issue is WHY Defendants did what they did. This is a factual question that cannot properly be determined at the summary judgment stage. Indeed, it is premature for any claims of Plaintiffs to be disposed at this juncture because why Mayor Moreau and his administration did what they did to these Plaintiffs is the critical issue. If it is determined at trial that the conduct of Defendants was benign—so be it. If this is the case, most of the claims made by Plaintiffs may be resolved in favor of Defendants But, if a jury determines that Defendants acted for improper purposes, it will logically and likely follow that Plaintiffs would be victorious.

Plaintiffs have a right to have a jury determine the facts of this case.

## *General Objections*

### I. DEFENDANTS' STATEMENT OF UNDISPUTED FACTS DOES NOT ADDRESS THE CORE FACT QUESTIONS BEFORE THE COURT. AS SUCH, DEFENDANTS' MOTION MUST FAIL BECAUSE, OF NECESSITY, THE CORE FACT QUESTIONS REMAIN TO BE DECIDED BEFORE A TRIER OF FACT.

Defendants have failed to assert that any of the pivotal fact questions before the Court in this litigation are undisputed. As a result, by this virtual admission, Defendants' motion must fail.

The core questions of fact in this case revolve around whether facts exist that would allow a jury to

reasonably conclude that Defendants acted for the purpose of harassing and punishing Plaintiffs because of their non-affiliation with the prevailing city administration, whether Defendants made defamatory statements to the press toward the same end, whether facts exist to allow a jury to conclude that Defendants acted with objective reasonableness, whether Defendants acted with authority to tamper with the Central Falls Library computers and whether Plaintiffs suffered emotional distress at the hands of Defendants. These facts remain in dispute and are enumerated in Plaintiffs' Statement of Disputed Facts filed concurrently herewith.

The statement of allegedly undisputed facts submitted by Defendants addresses none of these.

Defendants argue frequently in their brief that they should be given summary judgment because the undisputed facts submitted by them **do not support** Plaintiffs' claims. *e.g., Def.'s Memorandum, 18.* That is not a surprise given Defendants' self-serving motive in the preparation of their list. But, more importantly, such assertions lead to the obvious conclusion that the facts underlying Plaintiffs' claims **are in dispute**, and, thus, those claims should proceed to trial.

## II. DEFENDANTS HAVE SUBMITTED NO TRANSCRIPTS OR AFFIDAVITS TO SUPPORT THEIR ARGUMENTS.

Defendants have made occasional references to transcript page numbers but have failed to provide the Court with transcripts or excerpts from transcripts to allow the Court to examine the evidence submitted by Defendants. No affidavits have been submitted by Defendants.

Rule 56(c) provides: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In this case there are no interrogatories or admissions because none were sought from Plaintiffs.

The text of depositions is not provided to the Court and there are no affidavits submitted.

As such, Defendants have not even met the threshold requirement of submitting a rule compliant motion and, consequently, the submitted motion should be denied.

**III. DEFENDANTS, RATHER THAN COMPLETE DISCOVERY WITHIN THE TIME PROVIDED BY THE COURT, POSED LEGAL QUESTIONS TO PLAINTIFFS AT DEPOSITIONS AND NOW CONTEND THAT THE UNPREPARED RESPONSES BY PLAINTIFFS CONSTITUTE THEIR FULL LEGAL POSITION.**

Defendants did not propound interrogatories to Plaintiffs in time for response within the discovery period set by the Court. Rather, at depositions of Plaintiffs, Defendants' counsel asked lay Plaintiffs to enunciate the facts supporting the complicated legal theories in this case. They now cite to these deposition responses as Plaintiffs' comprehensive response. Of course, this process is unfair and provides a distorted presentation to the Court.

***Argument***

**IV. IN ORDER FOR THE COURT TO DETERMINE IF PLAINTIFFS HAVE ADDUCED SUFFICIENT FACTS TO GO TO TRIAL THE COURT NEEDS ONLY TO CONSIDER THE DEPOSITIONS OF DEFENDANT CHARLES MOREAU.**

The entire first deposition transcript of Defendant Moreau was previously submitted in the record of this case pursuant to the order of Magistrate Judge Martin. Such first deposition transcript was incorporated by Plaintiff Wilson as part of his Memorandum of Law in support of objection to Defendants Memorandum of Law. The remaining Plaintiffs do the same herewith.

Additionally, the second deposition transcript of Defendant Moreau is to be submitted in Plaintiff's Sur-Reply to Defendants' Motion for Summary Judgment against Plaintiff Wilson.

These transcripts, in addition to the other facts, referenced by Plaintiffs in this memorandum and in

those filed by Plaintiff Wilson, paint an accurate picture of a Mayor bent on driving Plaintiffs from city government without just cause and, often, without authority. The transcripts disclose a pattern of harassment and punishment visited upon Plaintiffs without reason or logic except for that motivated by Defendants' desire to remove these non-affiliated individuals from city government.

Plaintiffs assert that a jury could reasonably conclude that Defendants violated the First Amendment rights of Plaintiffs, defamed them, imposed emotional distress upon them and conspired against them.

**The Computer Counts**

**V. DEFENDANTS' CONTENTION THAT PLAINTIFFS' COMPUTER LAW CLAIMS FAIL BECAUSE DEFENDANTS HAD CONTROL OF THE CENTRAL FALLS LIBRARY COMPUTERS IS WRONG.**

The central element of Plaintiff' federal and state computer statute violation claim is unauthorized tampering with those computers. These claims are found at Counts X and XI of Plaintiffs' complaint.

In support of their argument that Defendants had lawful control of the computers within the Central Falls Library, Defendants offer no authority. Rather, they state such a conclusion without even a modicum of justification. "The mayor of the City would clearly have authority to access the City owned computers." *Def. Memo, 13.*

That Defendants were unable to point to any authority that gives the mayor of Central Falls control over library computers is not surprising in light of the deposition testimony of Defendant Moreau to the effect that he based his library search on his interpretation of a statute, rule or ordinance that he was unable to name. Such deposition testimony is attached hereto as "EXHIBIT A"

Indeed, Defendant Moreau was unable to recall a statute, rule or ordinance that gives him any authority over the public library inasmuch as Rhode Island state law vests such power with the Board of Library Trustees.

> § 29-4-6. Powers and duties of trustees
> The trustees shall take possession of the library, and shall thereafter be the legal guardians and custodians of the library. They shall provide suitable rooms for the library, arrange for the proper care of the library, choose one or more competent persons as librarians and fix their compensation, and make all needful rules and regulations for the government of the library and the use of the books; provided, that no fee for the use of the books shall ever be exacted. *R.I. Gen. Laws* § 29-4-6

In Central Falls, the Board of Library Trustees delegated the day to day operation of the library to the librarian. Such delegation was contained in the Board's bylaws. *See, Affidavit of Thomas Shannahan attached hereto as "Exhibit B".*

At no time did Plaintiff Thomas Shannahan authorize anyone to search the library computers. *Shannahan Aff.-Ex. B.*

Thus, at the time Defendants accessed the computes of the Central Falls Library, without warrant, they did so without authorization of the Board of Library Trustees, or anyone else.

## VI. DEFENDANTS' CONTENTION THAT THERE HAS BEEN NO FEDERAL COMPUTER LAW VIOLATION BASED UPON INSUFFICIENT DAMAGES AND THAT NO INTERSTATE OR FOREIGN COMMUNICATION WAS IMPLICATED IS FAULTY.

Defendants base their contention that the undisputed facts do not support jurisdiction based upon statutory minimum damages of $5,000 being attained and interstate communication being implicated. *Def. Memo, 12.* Again, this is another example of misapplication of the function of summary judgment by Defendants. Of course, the statements of undisputed facts drafted by Defendants' counsel does not support judgment in favor of Plaintiffs for violation of the federal computer statute. It would be a miracle if such statement did support such conclusion. Moreover, Plaintiffs have not sought summary judgment.

The real issue, of course, is whether there is sufficient evidence adduced by Plaintiffs to constitute a factual dispute that ought to be presented to a jury.

Plaintiffs refer the Court to the affidavits of Plaintiffs Shannahan and Donald D. Twohig that clearly show damages herein in excess of $5,000 and the implication of interstate communications. *Shannahan Aff.-Ex. B. See, Affidavit of Donald D. Twohig attached hereto as "Exhibit C".*

Defendants searched e-mail communications of Plaintiffs that was routed through the Yahoo.com server outside the State of Rhode Island, thus meeting the interstate communications test of claims under Count XI . *Shannahan Aff.-Ex. B. Donald D. Twohig Aff.-Ex. C. See, Affidavit of Donald P. Twohig attached hereto as "Exhibit D".*

Additionally, it is obvious that Plaintiffs have suffered damages in excess of $5000 as required for jurisdiction under USCS § 1030 in subsection (a)(5)(B). Damages to Plaintiffs are in the form of costs and expenses of litigation and loss of income intertwined with damages sustained from other acts of Defendants. *Shannahan Aff.-Ex. B. Donald D. Twohig Aff.-Ex. C. Donald P. Twohig Aff.-Ex. D.*

**The Constitutional Claims**

## VII. DEFENDANTS' CONTENTION THAT PLAINTIFFS' FOURTH AMENDMENT CLAIMS IN COUNT VI ARE INVALID IS BASED ON A MISREADING OF THE COMPLAINT EXACERBATED BY DEFENDANTS' FAILURE TO DO DISCOVERY.

Defendants have spent several pages in the memorandum contending that Plaintiffs, as employees, have no expectation of privacy in workplace computers. Defendants have made no arguments regarding Plaintiffs in their capacities as patrons of the Central Falls library who, in that capacity, used the searched computer system as part of the public access granted to every person to use the Central Falls library computers.

In fact, the use of the Central Falls library computers by Plaintiffs in their personal capacities was for the purpose of accessing e-mail services provided by Yahoo.com. By virtue of the search conducted by Robert Luke on the totality of the computer system, all e-mail accounts and messages stored on the

Central Falls library system were improperly searched. Yahoo.com is located in California.

Defendants conducted no discovery at all regarding the nature of Plaintiffs' Fourth Amendment Claim. Defendants filed no Interrogatories until shortly before close of discovery and asked no questions regarding the Fourth Amendment claim at deposition.

Defendants themselves acknowledge the speculative nature of their argument. "...it appears that the instant plaintiffs may be alleging that defendants violated their Fourth and Fourteenth Amendment right...by the search of the library computers." *Def. Memo, 6.* Defendants then go on to jump to the conclusion that Plaintiffs contend that their computer files were searched, and their rights violated in their capacity as employees.

## VIII. PLAINTIFFS WERE DENIED DUE PROCESS.

Once again, Defendants inexplicably support their argument that summary judgment should issue by contending that "[t]he undisputed facts fail to support the allegation that Plaintiff's (sic) due process rights were violated." *Def. Memo, 13.* In so arguing, as they do throughout their memorandum, Defendants acknowledge that there are open fact issues regarding whether Plaintiffs' rights to due process were provided. Accordingly, this question should go to a jury.

Substantively, Defendants generally attempt to convince the Court that these two (2) city employees and one long time city contractor had no property interests. On its face this makes no sense. In 2003 the First Circuit opined that a constitutionally protected property interest in continued public employment typically arises when the employee has a reasonable expectation that employment will continue. *Candelaria, et al v. Rivera Rodriguez, et al.*, 344 F.3d 103 (1st Cir. 2003). Such was obviously the case with both Plaintiffs Shannahan and Donald D. Twohig. Both were long term city employees protected under the merit personnel system of the City Charter.

Defendants argue that Donald P. Twohig had no property interest because he was "at best" an at

will employee. *Def. Memo, 14.* Mr. Twohig was no such thing. He was a contractor with a long term contractual relationship, not with the general purpose city government but with the Board of Library Trustees, holders of independent power and authority separate from the mayor's administration. *See, § V, Supra, Donald P. Twohig Aff.-Ex. D.* Such a statement flies in the face of their own Statement of Undisputed Facts where they assert that it is undisputed that Plaintiff Donald P. Twohig was an independent contractor. *Statement of Undisputed Facts, ¶ 1.*

Without support of any kind, Defendants contend that it is undisputed that Donald P. Twohig did not have a contractual relationship. *Def. Memo, 14.* They are wrong. Plaintiff clearly maintains that he had a contractual relationship with the Board of Library Trustees. This is an obvious disputed fact that should be determined by the trier of fact.

Indeed, Defendant Moreau's own testimony at deposition provides evidence of the status and duration of the relationship of Plaintiff Donald P. Twohig with the Board of Library Trustees.

Q. Now, sir, when did you become aware that
Mr. Twohig, Donald P. Twohig, was a contractor
working for the Central Falls Library?
A. I don't recall.
Q. Was it after you were elected mayor?
A. No. I had known that he had done work there for
years. I don't know when exactly, but --

*Moreau Depo. II Tr., 64.*

Defendants reference to *Washington Legal Foundation* actually supports Plaintiffs' position. That case held that property interests could not be speculative, in essence.[1] At bar, Donald P. Twohig's

1 The Court's holding was in dicta. Washington Legal Foundation is a case about IOLTA accounts and has nothing to do with

relationship with the Board of Library Trustees was anything but speculative. He had been doing work for the library for years as a contractor until the relationship was disturbed by Defendants.

Defendants next contend that Plaintiff Shannahan waived his property interest by telling the City Council that he was resigning. Defendants correctly assert that a claim of constructive discharge "will only succeed if plaintiff establishes that the 'working conditions imposed by the employer had become so onerous, abusive or unpleasant that a reasonable person in the employee's position would have felt compelled to resign.'" *Trigano v. Bain & Co.*, 380 F. 3d 22, 28 (1st Cir. 2004).

Are Defendants seriously contending that a police raid on this librarian's workplace, repeated public statements impugning this public servant's integrity and improper interference in the operation of the public library by Defendants did not create "onerous, abusive or unpleasant" working conditions? If they are so contending, then a fact question exists that ought to be heard by the trier of fact. If they are not their argument fails.

Next on Defendants' due process argument list is the assertion that there was an adequate state law remedy not availed by Plaintiffs. Such remedy, they contend is to be found in the Central Falls City Charter.2 In truth, Section 7-107 provides no remedy whatsoever for constructively discharged employees and for contractors terminated in violation of their First Amendment rights as alleged herein. Thus, Thomas Shannahan and Donald P. Twohig had no recourse whatsoever through the Central Falls city government. Interestingly, Donald D. Twohig has grieved his suspension and firing through his union grievance procedure. After hearing the evidence regarding the discipline and suspension of Plaintiff Donald D. Twohig, the arbitrator recently found such actions to be unjustified, ordered restitution of lost wages and removal of all references to such discipline and suspension from the personnel record of Plaintiff

anything close to the facts of this case.

2 In their Memorandum supporting their Motion for Summary Judgment against Thomas Wilson Defendants previously argued that

Twohig.

## IX. DEFENDANTS' CONTENTION THAT THOMAS SHANNAHAN IS NOT ENTITLED TO FIRST AMENDEMENT PATRONAGE FIRING PROTECTION IS MISGUIDED.

The Court should initially note that Defendants have made no argument that Defendants Twohig do not have First Amendment patronage firing protection. As such, these claims should proceed to trial.

As to the question of whether First Amendment protection ought to be afforded to a "policymaker", Defendants cited to the First Circuit holding in *Galloza v. Foy*, 389 F.3d 26, 229 (1st Cir., 2004) citing *Jiminez Fuentes v. Torres Gaztambide*, 807. Galloza provides seven (7) factors that should be utilized by the Court in determining if a public employee should receive patronage firing protection: 1) Relative Compensation Level; 2) Technical Expertise Required; 3) Extent of Supervision and Control; 4) Authority to Speak For Higher-Ups; 5) Influence Over Programs and Policy Initiatives; 6) Public Perception of The Position; 7) Relationship to Elected Officials, Party Leaders and Partisan Politics.

During the continued deposition of Defendant Moreau, he was asked about the factors set forth by the *Gallozza* court as they apply to Plaintiff Shannahan. Defendant Moreau's responses demonstrate clearly that application of the *Galloza* factors leads to the inescapable conclusion that Plaintiff Shannahan was not a policymaker and is entitled to patronage firing doctrine protection.

It is abundantly clear from the testimony of Defendant Moreau that the Central Falls librarian has no political role whatsoever. The librarian, who supervises five (5) or six (6) persons is paid less than municipal trash pickers and has no official relationship with the mayor, city counsel or political parties. Moreover, Defendant Moreau, when asked, could not think of a single policy formulated or implemented by Plaintiff Shannahan.

---

Plaintiffs could not litigate rights granted under the City Charter.

There can be no better evidence of the characteristics of the position of Central Falls librarian other than the testimony of Central Falls' mayor—Defendant Moreau.

## X. DEFENDANTS' CONTENTION (Def. Memo, 21) THAT THE RECORD DOES NOT SUPPORT A CONCLUSION OF "POLITICAL ANIMUS" BY DEFENDANTS IS NOT ONLY FALSE, BUT REFERENCES THE WRONG STANDARD.

It appears that Defendants have missed the point. There is no judicial reference and none is cited to the concept of "political animus". This lawsuit is about nonaffiliation—the issue described by the U.S. Supreme Court as being at the core of the landmark patronage firing case. *Elrod,* 349. Plaintiff Twohig allege that he was constructively discharged because he was not aligned politically with Defendant and his associates.

The record is replete with references to knowledge by Defendant Moreau of Plaintiffs' nonsupport and nonaffiliation with his political organization. Defendants' own Statement of Undisputed Facts offers some insight into Plaintiffs' non-affiliated status. *Statement of Undisputed Facts,* ¶¶ *11, 14-15.* Defendants themselves admit to the political activity of Plaintiffs on behalf of the former Mayor. *Def. Memo, 21.*

Even prior to his inauguration, Defendant Moreau announced that he planned to remove public employees associated with the prior administration. *Exhibit F.*

And, quite obviously, the mayor's obsession with rooting out individuals affiliated with the prior administration is evidenced by Defendants' fanatical raid on the Central Falls library for the admitted purpose of obtaining political literature thought to be on the library's computers and to discover individuals responsible for putting such literature there. If there were no other evidence as to the obsessed motivation of Defendant Moreau and his minions, the library raid itself would provide such evidence.

As contended by Defendants, Plaintiffs must only show that affiliation or nonaffiliation was a "**substantial or motivating**" factor in the conduct of Defendants. "To establish a prima-facie case, a

plaintiff must show that party affiliation was a substantial or motivating factor behind a challenged employment action." *Mercado-Alicea v. P.R. Tourism Co.*, 396 F.3d 46, 51 (1st Cir., 2005), Thereupon the burden shifts to Defendants to justify their actions.

Obviously, it is impossible for Plaintiffs to enter the psyche of Defendants, particularly principal Defendant Moreau, to determine and prove the precise nature of motivation and whether the political status of Plaintiffs was "substantial". It is highly improbable that any Defendant would admit that he was motivated by considerations of nonaffiliation under the circumstances of this case. And, absent the presence of the proverbial "fly on the wall", the only way any public employee might prove a patronage firing case is to show circumstantially that nonaffiliation is the probable reason for the conduct of Defendants.

Plaintiffs have met their burden by adducing evidence that Plaintiffs were identified with the prior administration and remained nonaffiliated with the new administration, that there was no logical or rational basis for treating Plaintiffs as they were treated and that only nonaffiliated public employees were singled out for such treatment.

It is for the trier of fact to determine if these facts amount to nonaffilation as the substantial or motivating factor behind the conduct of Defendants. To conclude otherwise is to eviscerate the patronage firing doctrine by making it virtually impossible for a Plaintiff to prove a case because of the impossibility of probing the inner most, subjective thoughts of Defendants.

Plaintiffs have clearly demonstrated the contextual basis for the conclusion that nonaffiliation was a substantial **OR** motivating factor for the conduct of Defendants

A jury could easily find that nonaffiliation was the motive for Defendants' actions against Plaintiffs based upon: 1) the political differences between Plaintiffs and Defendants firmly established in the record; 2) the total absence of any reasonable and rational basis for Defendants' singling out Plaintiffs' for

harassment and punishment; and 3) the fact that the personnel actions taken by Defendants were **ONLY** visited upon individuals (including Plaintiff Wilson) who were associated with the prior administration and who were nonaffiliated with the new administration.

Alternatively, it might be reasonably viewed that Plaintiffs have proven the political motivation given the low standard of preponderance of the evidence applied here. A jury might reasonably conclude that given the facts admitted by Defendants there is no other possibility than the political motivation of Defendants.

**Qualified Immunity**

**XI. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.**

The qualified immunity defense is not available to either Defendant Joyce or Defendant Bessette. Neither was a city employee or city official. *Exhibit G.*

Plaintiffs herewith incorporate by reference their arguments contained in the Memorandum of Law filed by Plaintiff Thomas Wilson in opposition to Motion for Summary Judgment found at pp. 14-26 therein.

Additionally, during his second deposition Defendant Moreau spontaneously offered the observation that a chief of police (and presumably other public employees) have the right to political participation as part of the First Amendment. Defendant Moreau further testified that he learned this in school. This testimony is significant in that Defendants have contended that they are entitled to qualified immunity because they did not know of the protections afforded to Plaintiffs. While this testimony does not demonstrate knowledge of the patronage firing doctrine itself, it does demonstrate general familiarity on the part of Defendant Moreau with constitutional rights of political participation. *Exhibit J.*

**Civil Rights Conspiracy**

## XII. DEFENDANTS HAVE MISAPPLIED THE LAW OF CIVIL CONSPIRACY.

Plaintiffs herewith incorporate by reference their arguments contained in the Memorandum of Law filed by Plaintiff Thomas Wilson in opposition to Motion for Summary Judgment found at pp. 43-47 therein.

**Defamation/Invasion of Privacy**

## XIII. DEFENDANTS SEEK TO EVADE RESPONSIBILITY FOR OUTRAGEOUS AND FALSE COMMENTS MADE AGAINST PLAINTIFFS, NOW KNOWN TO BE FALSE.

Statements were repeatedly attributed to Defendant Moreau in the local press suggesting directly and by innuendo that Plaintiffs were variously unreliable, incompetent, insubordinate, untrustworthy, guilty of criminal conduct, guilty of unethical conduct and other pejorative acts. Moreau Tr., 58, 62, 109, 160, 178, 204, 230, 238, 259.

Rather than contending, as is now done before this Court, that he was justified in making these remarks, Defendant Moreau contended at deposition that he was misquoted by several newspapers ninety percent (90%) of the time he has served as Mayor. He further contended that he did not ask for correction of the pejorative statements regarding Plaintiffs attributed to him and did not consider that such statements might damage Plaintiffs. *Exhibit H.*

Following this inherently incredible testimony the reporters who wrote the stories quoting Defendant Moreau testified at deposition that they accurate quoted him and that he has not contacted those reporters asking for retraction or correction. *Deposition of Kevin O'Connor, 15., Deposition of Tatiana Pina, 8-9., Deposition of David Casey, 8.*

Incredibly, after seeing statements accusing Plaintiffs of various forms of transgression and

infidelity attributed to him, Defendant Moreau did nothing. He did nothing throughout the past year even in light of his admission at deposition that, despite his public statements to the contrary, he never conducted an investigation of the activities of Plaintiffs and has no information that they did anything wrong. *Exhibit I.*

Defendant Moreau knew he had no evidence to support his public statements at the time he made them and now denies those statements as his only means of evading responsibility for the outrages he has imposed on these Plaintiffs. The conduct of Defendant Moreau is at once vicious and cavalier.

His implausible denial of making false statements against Plaintiffs is evidence of his consciousness of liability.

If this Mayor believed he were legally justified in saying the things he did about Plaintiffs, he would not deny making those statements.

Outrageously, Defendants seem now to be suggesting to the Court that the statements attributed to Defendant Moreau were, in fact, made and that, somehow, Defendant Moreau was privileged to make them. Their contention, in light of the deposition testimony of Defendant Moreau, that the statements attributed to him are fair comment is patently ridiculous.

The simple fact is that a jury is likely to find that Defendant Moreau was not telling the truth when he stated that he was misquoted ninety percent (90%) of the time and that he did in fact make the statements attributed to him. A jury is further likely to find that the statements made by Defendant Moreau were untrue and known by him to be untrue. The same jury might easily find that the fact that Defendant Moreau refuses to set the record straight is evidence of malice.

Mayor Moreau cannot at once deny making highly damaging statements against Plaintiffs and, at the same time, claim those statements are legally justified. The legal arguments made on his behalf at bar serve only to call into question the veracity of Defendant Moreau's sworn testimony.

Plaintiffs herewith incorporate by reference their arguments contained in the Memorandum of Law filed by Plaintiff Thomas Wilson in opposition to Motion for Summary Judgment found at pp. 37-42 therein.

**Infliction of Emotional Distress**

### XIV. THE CONDUCT OF DEFENDANTS WAS, AT LEAST, EXTREME AND OUTRAGEOUS.

The sum and substance of the argument of Defendants is that they are not liable for emotional distress visited upon Plaintiffs because it was not "extreme and outrageous". They cite to precedent with which Plaintiffs do not disagree.

However, this Court has only to view the facts cited herein regarding Defamation to conclude the outrageous and extreme conduct of Defendants, particularly Defendant Moreau. To go further, the Court might review the facts cited herein by reference in rebuttal to Defendants' assertion that their conduct has been objectively reasonable.

The truth is that the words "extreme and outrageous" are too mild to describe the conduct of Defendants. Such an appellation is, in relative terms, a compliment. From raiding a public library based upon unreliable and misquoted information provided by a former mayor during a children's softball game, to repeatedly defaming Plaintiffs based on known false information, this mayor and his cronies have preyed upon Plaintiffs as a predators drunk with newly acquired power.

Based on the facts shown, this Court should conclude that a jury might reasonably conclude that, at a minimum, the conduct of Defendants "extreme and outrageous."

**Violation of the Central Falls City Charter**

### XV. THESE DEFENDANTS HAVE MADE NO ARGUMENT REGARDING COUNT IV OF THE COMPLAINT.

Because they have raised no objection or argument against this count, the claim contained therein

should stand against these Defendants.

It is interesting to note, however, that Defendants previously contended in their summary judgment papers regarding Plaintiff Wilson that Plaintiffs could not litigate a municipal charter. A recent Rhode Island Supreme Court case involving the firing of a police chief holds the contrary:

> When construing a municipal charter, the usual rules of statutory construction apply." *Providence Teachers Union Local No. 958 v. Napolitano*, 554 A.2d 641, 643 (R.I. 1989); see also *Coventry School Committee v. Richtarik*, 122 R.I. 707, 713, 411 A.2d 912, 915 (1980). "It is the accepted rule that the provisions of city charters should be construed so as to give, so far as possible, reasonable meaning and effect to all parts of the section in question. Further, the words used therein should be given their usual and ordinary meaning." *Carter v. City of Pawtucket*, 115 R.I. 134, 138, 341 A.2d 53, 56 (1975). *Kells v. Town of Lincoln*, 874 A.2d 204 (R.I., 2005)

***Conclusion***

Defendants have failed to show that they are entitled to judgment as a matter of law based upon undisputed facts. Defendants are unable to meet that burden because the core issues in this case, which are clearly in dispute, remain to be decided by a jury.

Plaintiffs have brought before the Court sufficient facts that, if proven before a trier of fact, will result in judgment. This is a complicated case with multiple causes of action, multiple plaintiffs and multiple defendants. The entire case should be allowed to proceed to trial. Let the parties offer their evidence. Let the jury decide.

RESPECTFULLY SUBMITTED,
PLAINTIFFS
By Their Attorneys,

Sara M. Quinn

Sara M. Quinn, Esq. #2798
QUINN & QUINN, L.L.P.

260 West Exchange Street
Suite 310
Providence, Rhode Island 02903
(401) 274-3000
(401) 274-3074 (fax)

Leon A. Blais, Esq.
Blais & Parent
Cabot Business Park
20 Cabot Boulevard
Mansfield, MA 02048
(508) 618-1280
(617) 812-0459 (fax)

Date: July 1, 2005

**Certificate of Service**

I, Leon Blais, herewith certify that on July 1, 2005 I hand-delivered a copy of this document to counsel indicated below:

Elizabeth Noonan, Esq.
Adler, Pollack and Sheehan
8th Floor
One Citizens Plaza
Providence, RI 02903

Marc DeSisto, Esq.
211 Angell Street
Providence, RI 02906

Leon Blais

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

RECEIVED
JUL 01 2005
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

THOMAS WILSON, DONALD P. TWOHIG, DONALD D. TWOHIG and THOMAS SHANNAHAN,
Plaintiffs

vs. C.A. No. 03-575L

CHARLES D. MOREAU, in his individual capacity and in his capacity as agent for the City of Central Falls; JOHN P. KUZMISKI, in his capacity as finance director and treasurer of the City of Central Falls; RICHARD B BESSETTE, individually and in his capacity as agent for the City of Central Falls; MARTIN JOYCE, Individually and in his capacity as Acting Personnel Specialist of the City of Central Falls; RAYMOND COONEY, individually and in his capacity as City Solicitor of the City of Central Falls; ALBERTO CARDONA, individually and in his capacity as agent for the City of Central Falls; KEVIN GUINDON, individually and in his capacity as a Central Falls Police Officer; MARK BRAYALL, Individually and in his capacity as a Central Falls Police officer
Defendants

**<u>MEMORANDUM OF LAW IN SUPPORT OF THE OBJECTION OF PLAINTIFFS DONALD P. TWOHIG, DONALD D. TWOHIG AND THOMAS SHANNAHAN TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

# <u>EXHIBITS A-J</u>

# EXHIBIT A

EXHIBIT A

Q. Do you control the equipment inside that building?
A. Yes, we do.
Q. Under what authority?
A. Under the city pays for it.
Q. Under the city pays for it?
A. Yeah.
Q. What authority is that?
A. We own the -- we own the property inside the -- the library, and as the mayor I have a duty to the taxpayers to protect that.
Q. Do you have a single reference to any statute, rule, regulation, ordinance, charter provision that backs up what you just said?
A. It's my interpretation --
MS. NOONAN: Objection.
A. It's my interpretation that it's, you know -- as the mayor of the city it's my responsibility, just as it is to see that the public works department is -- and make sure that that place is locked at night. Do I have authority to take a truck? No, but I make sure that they're protected. And that's the authority that I -- I -- that's my interpretation.

250

Q. Of what?
A. Of being the mayor of the city.
Q. No, of what regulation? What are you interpreting?
A. It's just my interpretation. It's just the way I feel as the mayor.
Q. This is just your feeling?
A. Yes.
Q. It's your feeling that you have the authority, is that correct?
A. Yes.
MS. NOONAN: Objection.
Q. So all of these actions that you've taken to send police officers into the library, to send computer consultants into the library, to lock -- to change

the locks in the library, it's all based on your feelings, is that correct?

MS. NOONAN: Objection.

A. It's based on my interpretation of how the city is supposed to be run.

Q. Interpretation of what?

A. It's my interpretation.

Q. Of what?

A. My perception of how the city is supposed to be run.

251

Q. Your perception of any -- do you have a perception of a rule, a regulation --

A. No.

Q. -- a law?

A. No, I don't.

Moreau Tr. I, 249-251.

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOMAS WILSON, DONALD P. TWOHIG, DONALD D. TWOHIG and THOMAS SHANNAHAN, Plaintiffs | : | |
| vs. | : | C.A. No. 03-575L |
| CHARLES D. MOREAU, in his individual capacity and in his capacity as agent for the City of Central Falls; JOHN P. KUZMISKI, in his capacity as finance director and treasurer of the City of Central Falls; RICHARD B BESSETTE, individually and in his capacity as agent for the City of Central Falls; MARTIN JOYCE, Individually and in his capacity as Acting Personnel Specialist of the City of Central Falls; RAYMOND COONEY, individually and in his capacity as City Solicitor of the City of Central Falls; ALBERTO CARDONA, individually and in his capacity as agent for the City of Central Falls; KEVIN GUINDON, individually and in his capacity as a Central Falls Police Officer; MARK BRAYALL, Individually and in his capacity as a Central Falls Police officer Defendants | : | |

**AFFIDAVIT OF THOMAS SHANNAHAN**

I, Thomas Shannahan under the pains and penalties of perjury, depose and say as follows:

1. I am a Plaintiff in the above entitled action.

2. I am formerly Director of the Central Falls Public Library. I worked for the Central

Falls Board of Library Trustees until I told the Central Falls City Council that I was going to quit because of the working conditions created by Mayor Moreau. These conditions included a raid on the library, statements to the press to the effect that I was incompetent and insinuations and innuendo that Donald P. Twohig had stolen or misspent hundreds of thousands of dollars in grant funds I had obtained through my work. Mayor Moreau also hindered ongoing work at the library by interfering with the relationship between Mr. Twohig and the Board of Library Trustees. The Mayor's public statements to the effect that the former Mayor's campaign had been run out of the library were embarrassing and outrageous, not to mention false. The conditions established by Mayor Moreau were well beyond the normal give and take of administration change. I had lived with such changes on several occasions previously. Police raids and newspaper attacks implying and suggesting incompetence and dishonesty are not part of the normal political turmoil one might endure. I believe I was treated this way because I told Mayor Moreau I would not support him when he approached me.

3. In addition to being an employee of the library I was also a patron. As such I used the library computers personally. Such privileges were offered to anyone who came to the library. In using the library computers personally I maintained an e-mail account through Yahoo.com. Yahoo.com is located in California. Therefore, my e-mail messages would be routed through California as I sent and received them. When the police came to the library I was there. I do not know if the police and the Mayor's library raid computer consultant were able to view my e-mails because I do not know if temporary internet files were left on the computer I used. However, I do know that consultant Luke attempted to search all files on the library computers. As a result of the search of the library computers. Donald D. Twohig, Donald P. Twohig and I have suffered damages well in excess of $5,000. Attorney's fees, expenses and damages resulting from disclosure of the fact of the computer search constitute my damages.

4. I wanted to clarify that at no time did I ever consent to anyone searching the library computers. The search of the library computers by the police and Mr. Luke, the consultant, were without authorization. Under Rhode Island law and the Central Falls Charter, the public library is under the supervision of the Board of Library Trustees, not the Mayor. I was appointed by the Board of Library Trustees and was entrusted with the day to day operations of the library by the Board's bylaws. As such, when the police came to the library and demanded computer passwords the library staff initially resisted. The police then threatened arrest. I responded that we had nothing to hide and would not resist the search. However at no time did I voluntarily give permission to anyone to search the library computers.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON JULY 1, 2005.

Thomas Shannahan

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THOMAS WILSON, DONALD P. TWOHIG, DONALD D. TWOHIG and THOMAS SHANNAHAN, Plaintiffs : | |
| vs. : | C.A. No. 03-575L |
| CHARLES D. MOREAU, in his individual capacity and in his capacity as agent for the City of Central Falls; JOHN P. KUZMISKI, in his capacity as finance director and treasurer of the City of Central Falls; RICHARD B BESSETTE, individually and in his capacity as agent for the City of Central Falls; MARTIN JOYCE, Individually and in his capacity as Acting Personnel Specialist of the City of Central Falls; RAYMOND COONEY, individually and in his capacity as City Solicitor of the City of Central Falls; ALBERTO CARDONA, individually and in his capacity as agent for the City of Central Falls; KEVIN GUINDON, individually and in his capacity as a Central Falls Police Officer; MARK BRAYALL, Individually and in his capacity as a Central Falls Police officer Defendants : | |

## AFFIDAVIT OF DONALD D. TWOHIG

I, Donald D. Twohig under the pains and penalties of perjury, depose and say as follows:

1. I am a Plaintiff in the above entitled action.

2. I was formerly employed by the Central Falls Public Library. I was principally responsible for operation of the library's computer system although I carried the title of Assistant Director of the library. I reported to Thomas Shannahan, Director of the Library or librarian. He, in turn, reported

to the Board of Library Trustees. Prior to the change in administrations I had never had any trouble in my job.

3. I was fired by Mr. Shannahan's successor, Julia Iacono, after being suspended and disciplined by her. I have grieved all of these actions through my union. An arbitrator has found that my suspension and discipline was unjustified. The arbitrator has ordered restitution and removal of references of these acts from my personnel file.

4. In addition to being an employee of the library I was also a patron. As such I used the library computers personally. Such privileges were offered to anyone who came to the library. In using the library computers personally I maintained an e-mail account through Yahoo.com. Yahoo.com is located in California. Therefore, my e-mail messages would be routed through California as I sent and received them. This was true for Thomas Shannahan and Donald P. Twohig, my father, as well.

5. I was present when the police came to search the library computers. I became aware that Mr. Luke ran a search of all of the computers in the library. I personally saw a search of my father's private e-mail, kept as a library patron, by Mr. Luke and a detective. I was not allowed to watch as Mr. Luke and the detective searched all of the other computers, so I do not know if they accessed the temporary Internet files which may have given them access to information from private e-mails.

6. As a result of the search of the library computers Mr. Shannahan, my father and I have suffered damages well in excess of $5,000. Attorney's fees, expenses and damages resulting from disclosure of the fact of the computer search constitute my damages.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON JULY 1, 2005.

Donald D. Twohig

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THOMAS WILSON, DONALD P. TWOHIG, DONALD D. TWOHIG and THOMAS SHANNAHAN, Plaintiffs | |
| vs. | C.A. No. 03-575L |
| CHARLES D. MOREAU, in his individual capacity and in his capacity as agent for the City of Central Falls; JOHN P. KUZMISKI, in his capacity as finance director and treasurer of the City of Central Falls; RICHARD B BESSETTE, individually and in his capacity as agent for the City of Central Falls; MARTIN JOYCE, Individually and in his capacity as Acting Personnel Specialist of the City of Central Falls; RAYMOND COONEY, individually and in his capacity as City Solicitor of the City of Central Falls; ALBERTO CARDONA, individually and in his capacity as agent for the City of Central Falls; KEVIN GUINDON, individually and in his capacity as a Central Falls Police Officer; MARK BRAYALL, Individually and in his capacity as a Central Falls Police officer Defendants | |

**AFFIDAVIT OF DONALD P. TWOHIG**

I, Donald P. Twohig under the pains and penalties of perjury, depose and say as follows:

1. I am a Plaintiff in the above entitled action.

2. I was formerly a contractor working for the Central Falls Board of Library Trustees at the Central Falls Library. I worked in this capacity for more than five years. I

believe I had a contractual relationship with the Board of Trustees. After Charles Moreau was elected his city solicitor, Raymond Cooney, told the Board of Library Trustees it should not hire me any more. And, Richard Bessette, head of Mr. Moreau's transition team, began to question whether I had insurance and a contractor's license. I did not need a contractor's registration but I obtained one anyway to attempt to appease the Mayor. It didn't work. I still was not allowed to continue my work at the library and payment for work I had performed was held up. I was the only city contractor treated like this. I believe I was treated like this because I would not support Mayor Moreau.

3. In addition to being an employee of the library I was also a patron. As such I used the library computers personally. Such privileges were offered to anyone who came to the library. In using the library computers personally I maintained an e-mail account through Yahoo.com. Yahoo.com is located in California. Therefore, my e-mail messages would be routed through California as I sent and received them. When the police came to the library I was there for part of the time. The police demanded that I give them my personal password for my Yahoo.com e-mail. I gave it to them under threat of arrest.

4. As a result of the search of the library computers Mr. Shannahan, my son and I have suffered damages well in excess of $5,000. Attorney's fees, expenses and damages resulting from disclosure of the fact of the computer search constitute my damages.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON JULY 1, 2005.

Donald P. Twohig

Donald P. Twohig

# EXHIBIT E

EXHIBIT E

Q. Now, sir, let me turn your attention to Tom Shannahan. Are you aware that you've argued before the court that Mr. Shannahan is a policy maker?
MR. DESISTO: Objection. You can answer if you know.
A. Yes.
Q. Could you tell us during the period of your administration what policies Mr. Shannahan made?
MR. DESISTO: Objection. You can answer.
A. I don't recall any.
Q. You know of none?
A. Not that I recall.
Q. Do you know how much money the -- Mr. Shannahan made as -- in his position with the City of Central Falls?
A. I believe it's around 44, $46,000 a year, not counting health benefits and the package that the department heads get.
Q. What does a laborer in the public works department receive in Central Falls?
A. Offhand, it's around 18 dollars an hour, not counting fringe benefits, health benefits, Delta



Dental.
Q. Do you know how many hours a year a laborer in the public works department works?
MR. DESISTO: Did you say hours a year?
MR. BLAIS: Per year, yes.
A. It depends on their -- there's a lot of factors. Depends on overtime, depends on weather, whether they plow in the winter, depends on the amount of time they've been there, amount of vacation time they have, sick time they have, personal time they have. It's roughly 35 hours a week.
Q. Do laborers in the public works department receive

overtime?
A. Yes, they do.
Q. Do you know if overtime is at the rate of time-and-a-half?
A. Time-and-a-half, yes, it is.
Q. And do they pay overtime for snow removal operations?
A. Yes, they do.
Q. Any other reasons that they would get overtime?
A. The only time that they would receive overtime is after their regular workday. If there's snow to be removed during the day then -- during the regular



working hours then they get paid their regular rate. Once it goes into after 3:30 on a regular day, they get the pay of time-and-a-half. If it's on the weekend they get paid time-and-a-half.
Q. Would they get overtime for factors other than snow?
A. Yes.
Q. Construction projects or some other purpose, is that correct?
A. Yes, sir; water breaks.
Q. The work week is 35 hours, is that correct?
A. I believe so.
Q. Sir, directing your attention to the position of library director, what are the requirements to be a library director in Central Falls?
A. I don't know the specific job specification, description. I know you need a master's of library science for that position.
Q. You do need a master's degree in library science?
A. Yes.
Q. Do you know what is involved in obtaining a master's degree in library science?
A. No, I don't.
Q. You were, were you not, involved in the hiring

-0-

Who does the library director in the Central Falls Library supervise?

A. The employees at the library.

Q. Do you know how many there are?



A. There's five, plus one part time one right now.

Q. Are these employees members of a collective bargaining unit?

A. Yes, they are.

Q. What job classifications do these employees hold?

A. I don't know exactly, their exact titles.

Q. Are they basically clerks?

A. I think there's clerks, there could be a technician. I'm not sure exactly what the --

Q. Now, does the librarian of the Central Falls Public Library have the authority to speak for the mayor of Central Falls?

A. No.

Q. Does the librarian of the Central Falls Public Library have the authority to speak for the city council?

A. No.

Q. Now, I believe you testified a few minutes ago that the librarian of the Central Falls Public Library reports to the board of library trustees, is that correct?

A. Yes.

Q. What's the function of the board of library trustees?



A. Oversee the library.

Q. Does the board of library trustees decide what particular programs the library should offer?

A. I think on a recommendation from the director.

Q. But it is the board that makes that decision, is that correct?

A. I believe so, yes.

Q. What else does the board do?

A. Oversee the librarian. They work with the librarian, see that it's run properly.
Q. Now, sir, does the librarian of the Central Falls Public Library as part of his or her job have a required relationship with the leaders of the democratic party of Central Falls?
MR. DESISTO: Objection. You can answer.
A. No, I don't think so.
Q. Does the librarian of the Central Falls Public Library have a required role in partisan politics?
MR. DESISTO: Objection. You can answer.
A. If they wish, I believe.
Q. But that's voluntary, is that correct?
A. Whatever they want to do.
Q. It's not required as part of the position --
A. No.



Q. -- is that correct?
Now, what is the relationship between the library director and the mayor of Central Falls?
MR. DESISTO: Objection. You can answer if you understand the question.
A. He's a department head.
Q. Who reports to the board of library trustees, is that correct?
A. Sure.
Q. How are the members of the board of library trustees appointed?
A. Appointed by the mayor, approved by the council.
Q. What is the relationship between the librarian of the Central Falls Library and the members of the city council?
A. Whatever he wants it to be. Whatever he or she wants it to be.
Q. Is there any requirement that you're aware of that there be a particular relationship between the librarian and the members of the council?

A. No.
Q. Now, is there -- other than the democratic party in Central Falls, is there any other political party?
A. There's a republican party. I don't know if



there's an independent party. Democrats and republicans.
Q. With regard to Mr. Shannahan and Mr. Wilson, is there any requirement -- strike that.
With regard to the positions of chief of police and librarian, is there any requirement that those positions have any relationship with the republican party or the independent party, if there is one?
A. No.
Q. Sir, to the best of your knowledge is there any prohibition against political activity by the chief of police or the library director?
MR. DESISTO: Objection. You can answer.
A. Not to my knowledge.

# EXHIBIT F

EXHIBIT F

Q. Now, drawing your attention to Plaintiff's 15, you have reviewed that already, I believe. What is the headline of that article?

171

A. "Mayor-elect outlines plan to clean house."
Q. Would you take a look at the first highlighted section. Would you please read that into the record.
A. (As read) "As for city positions, Moreau said as of January 5, Police Chief Thomas Wilson, Personnel Director Brad Southworth, City Solicitor Vincent Ragosta, Assistant Solicitor Matthew Oliverio and possibly Finance Director John Kuzmiski would be either fired or not have their contracts renewed."
Q. Were you misquoted again there?
A. Yeah, absolutely. Yeah.

Moreau Tr., 170-171.

# EXHIBIT G

EXHIBIT G

Q. Now, you testified earlier, I believe, that the personnel specialist of the City of Central Falls is a contractor, is that correct?
A. Yes.
Q. That is not a salaried position, is that correct?
A. The personnel specialist is a contract position, yes.

Moreau II, Tr. 45

Q. That's fine. Thank you. Was Mr. Bessette ever paid any money to serve on your transition team or to act as your advisor?
A. No.
Q. Is he an official of the City of Central Falls?
A. No.
Q. Is he an employee of the City of Central Falls?
A. No.
Q. Since you've been mayor has he ever been either an official or employee of the City of Central Falls?
A. No.

Moreau II, Tr. 57

# EXHIBIT H

EXHIBIT H

A. Like I said, these reporters have not quoted me correctly since I've taken over. Tatiana Pina, for one, she calls councilmen by the wrong names in articles, and it's just the way it's been.
Q. So it is your testimony, sir, that since you've assumed office you have never been quoted correctly by members of the press?
A. I would probably say -- I would say -- probably say 90 percent of the time probably not.
Q. Ninety percent of the time?
A. Yeah.
Q. When that quotation appeared in the newspaper did

207

you call anyone to correct it?
A. No, no. I was so -- so disgusted with the newspapers that I don't bother.
Q. Would it occur to you that the publication of that statement would be harmful to any of my clients?
A. No.

<u>Moreau Tr. 206-207.</u>

# EXHIBIT I

EXHIBIT I

Q. Has any report been given to you regarding this looking into?
A. No.
Q. No report at all?
A. No, not yet. I haven't seen it.
Q. Did you tell Tatiana Pina that the public would be surprised when they saw the outcome of this looking into? She recorded, investigation.
A. I don't believe I told her they'd be surprised, no.
Q. No?
A. I don't believe I that said to her, no.
Q. And so nothing has been reported to you, is that correct?
A. Yes. Not yet, no, not from the city solicitor, not from the finance department, no.
Q. No one?
A. No one.
Q. Do you have any report of wrongdoing by the part of my clients?
MS. NOONAN: Objection.
A. No.

216

Q. None. Have you announced this to the press?
A. No.

Moreau Tr., 215-216

# EXHIBIT J

EXHIBIT J

Q. Does the chief of police as part of his or her official duties consult with the party leaders of the democratic party of Central Falls?
A. If they want to.
Q. But it's not part of the job, is it?
A. No.
Q. As part of the job functions of the chief of police as opposed to individuals holding the job of chief of police, does the chief as part of his or her duties participate in partisan politics?
MS. NOONAN: Objection.
MR. DESISTO: Objection. You can answer.
A. I think that they can participate in any politics they want, I believe.
Q. What's the basis of that knowledge?
MR. DESISTO: Objection. You can answer.



A. I just think the guy is the chief, if there's a chief anywhere if he wants to be involved he can be involved.
Q. Do you know what the First Amendment is, sir?
MR. DESISTO: Objection. You can answer.
Q. The First Amendment to the United States Constitution?
A. Freedom of speech.
Q. Right. Do you know that chiefs of police are protected, generally speaking, by the First Amendment?
MS. NOONAN: Objection.
MR. DESISTO: Objection.
A. I didn't know that.
Q. But when you said chiefs of police could participate in political activities if they wanted

to, do you know that to be supported by the First Amendment of the United States Constitution?

MS. NOONAN: Objection.

MR. DESISTO: Objection.

A. No.

Q. When did, if you can recall, did you first learn about the First Amendment to the United States Constitution?



MS. NOONAN: Objection.

MR. DESISTO: Objection.

A. When they teach it in school, meaning teachers, or whenever it comes up in school.

<u>Moreau Tr. II, 16-17</u>