UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOMAS WILSON, DONALD P. TWOHIG, DONALD D. TWOHIG and THOMAS SHANNAHAN, Plaintiffs | : | |
| vs. | : | C.A. No. 03-575L |
| CHARLES D. MOREAU, in his individual capacity and in his capacity as agent for the City of Central Falls; JOHN P. KUZMISKI, in his capacity as finance director and treasurer of the City of Central Falls; RICHARD B BESSETTE, individually and in his capacity as agent for the City of Central Falls; MARTIN JOYCE, Individually and in his capacity as Acting Personnel Specialist of the City of Central Falls; RAYMOND COONEY, individually and in his capacity as City Solicitor of the City of Central Falls; ALBERTO CARDONA, individually and in his capacity as agent for the City of Central Falls; KEVIN GUINDON, individually and in his capacity as a Central Falls Police Officer; MARK BRAYALL, Individually and in his capacity as a Central Falls Police officer Defendants | : | |

**PLAINTIFF THOMAS WILSON'S SUR-REPLY IN SUPPORT OF HIS OBJECTION TO DEFENDANTS'MOTION FOR SUMMARY JUDGMENT**

***Background***

On June 8, 2005 the Court approved the filing of this sur-reply (Docket # 108) based upon motion of Plaintiff (Docket # 107). The Court also allowed Plaintiffs motion to file excess pages (Docket #108-109). *Inter Alia,* the purpose of this sur-Reply is, as expressed by Plaintiff in his motion, is to incorporate the testimony of Defendant Charles Moreau at his extended deposition.

The transcript of such testimony has become available and is filed herewith as "Exhibit A". The transcript of Defendant Moreau's first deposition sessions was previously filed with the Court by order of Magistrate Judge Martin.

***Argument***

**I. DEFENDANTS, AS THEY HAVE DONE REPEATEDLY, MISAPPLY THE PROCESS OF SUMMARY JUDGMENT.**

Defendants contend in their Reply Memorandum, as they have in all of their summary judgment papers, that "the undisputed facts of the instant case fail to support, as a matter of law, the various federal and state law claims brought by plaintiff." Def. Reply Memo, 1.

In fact, though, the burden on the moving party is to demonstrate that, under the undisputed material facts, movant is entitled to judgment as a matter of law.

> § 56.11 To Obtain Summary Judgment, Movant Must Demonstrate That, Under Undisputed Material Facts, Movant Is Entitled to Judgment as Matter of Law
>
> [1]-- Rule 56 and Case Law Require Movant to Demonstrate That There Is No "Genuine Dispute of Material Fact" and That Movant Is "Entitled to Judgment as a Matter of Law"
>
> 11-56 Moore's Federal Practice - Civil § 56.11

It is insufficient to argue that a list of self serving alleged undisputed facts do not support judgment for Plaintiff and, therefore, judgment must be rendered in favor of Defendants. This convoluted reasoning, as applied at bar by Defendants herein repeatedly, serves only to demonstrate clearly that there is a factual dispute that needs to be resolved at trial.

**II. THE TESTIMONY OF DEFENDANT MOREAU DEMONSTRATES CLEARLY THAT, UNDER THE CASE CITED BY DEFENDANTS THEMSELVES, PLAINTIFF WILSON (AND PLAINTIFF SHANNAHAN) ARE NOT POLICYMAKERS.**

As to the question of whether first amendment protection ought to be afforded to a "policymaker", Defendants cited to the first circuit holding in Galloza v. Foy, 389 F.3d 26, 229 (1st Cir., 2004) citing Jiminez Fuentes v. Torres Gaztambide, 807. Galloza provides seven factors that should be utilized by the Court in determining if a public employee should receive patronage firing protection: Relative Compensation Level, Technical Expertise Required, Extent of Supervision and Control, Authority to Speak For Higher-Ups, Influence Over Programs and Policy Initiatives, Public Perception of The Position, Relationship to Elected Officials, Party Leaders and Partisan Politics.

During the continued deposition of Defendant Moreau he was asked about the factors set forth by the Gallozza court as they apply to Plaintiff Wilson (and Plaintiff Shannahan). Defendant Moreau's responses demonstrate clearly that application of the Galloza factors leads to the inescapable conclusion that Plaintiff Wilson (and Plaintiff Shannahan) was not a policymaker and is entitled to patronage firing doctrine protection.

It is abundantly clear from the testimony of Defendant Moreau that the Central Falls police chief and librarian has no political role whatsoever. The chief of police, who receives no overtime is paid less than several of the officers he supervises and has no official relationship with the mayor, city counsel or political parties. Moreover, Defendant Moreau, when asked, could not think of a single policy formulated or implemented by Plaintiff Wilson or of his successor, Chief Joseph Moran. Moreau Tr. II, 3-19-Ex. A.

The First Circuit essentially reaffirmed the Galloza standards recently when it discussed application of many of the Galloza considerations. Hadfield v. McDonough, 2005 U.S. App. LEXIS 8259, 7-11 (1st Cir., 2005).

There can be no better evidence of the characteristics of the position of Central Falls chief of police other than the testimony of Central Falls' mayor—Defendant Moreau.

## III. CONTENTION OF DEFENDANTS THAT A CHIEF OF POLICE IS A POLICYMAKER "AS A MATTER OF LAW" IS FALSE AND IS UNSUPPORTED BY THE CASE LAW SUBMITTED.

In support of this assertion, Defendants point to just one Seventh Circuit case as primarily supporting their argument: Upton v. Thompson, 930 F.2d 1209 (7th Cir. 1991). Without further authority Defendants come to the conclusion that the Court's analysis in Upton "and its progeny" support the analysis that police chiefs are automatically bereft of first amendment patronage firing protection because deputy sheriffs in a small Northern Illinois county were not entitled to protection. In fact, the facts in Upton were easily distinguishable from those at bar. The deputy sheriffs in Upton were all traditionally political appointees. In fact, historically all deputies had been replaced with the election of a new sheriff. Indeed, the Upton court remarked that modern civil service protections giving job protection would obviate the need for cases such as Upton. Plaintiff Wilson had such protections under local provisions.. C.F. City Charter, Sec. 7-101.

In the Third Circuit the Court determined that deputy sheriffs were, in fact, entitled to patronage firing protection and noted that other it was not alone.

> Other courts have reached similar results. In Jones v. Dodson, 727 F.2d 1329 (4th Cir. 1984), the court, after noting that the Branti Court "flatly rejected . . . any general notion that mutual trust and confidence could only exist between members of the same political party," held that the duties of the deputy sheriffs did not implicate "'partisan political interests.'" Id. at 1338 (quoting Branti, 445 U.S. at 519); [**24] see also Barrett v. Thomas, 649 F.2d 1193, 1201 (5th Cir. 1981) (Unit A) (holding that in large department, "the absence of political cohesion between sheriff and deputy can hardly be said to undermine an intimate working relationship"), cert. denied, 456 U.S. 925, 72 L. Ed. 2d 440, 102 S. Ct. 1969 (1982); Francia v. White, 594 F.2d 778 (10th Cir. 1979) (deputy sheriffs in non-policymaking positions who were adequately performing their jobs protected under Elrod). Contra Upton v. Thompson, 930 F.2d 1209, 1218 (7th Cir. 1991) (because of "autonomy and discretionary authority" exercised by deputy sheriffs, political considerations were justified in employment decisions), cert.

> denied, 112 S. Ct. 1262 (1992); Terry v. Cook, 866 F.2d 373, 377 (11th Cir. 1989) (affirming dismissal of claims by former deputy sheriffs that they were dismissed for political reasons). n8
>
> Burns v. County of Cambria, 971 F.2d 1015, 1023 (3d Cir., 1992).

The citation of the Upton case by Defendants is notable in that previously Defendants have contended that no action was taken against Plaintiff based on political considerations. The Upton case is about whether political considerations may be employed in firing a particular public employee a particular public employee.

## IV. THE CASE CITED BY DEFENDANTS IN SUPPORT OF THEIR CONTENTION THAT ACTUAL FUNCTIONS OF A PUBLIC POSITION ARE IRRELEVANT AS TO DETERMINATION OF AVAILABILITY OF PATRONAGE FIRING PROTECTION IS EASILY DISTINGUISHABLE. YET, EVEN IF IT WAS NOT, THE DEPOSITION TESTIMONY OF DEFENDANT MOREAU CLEARLY DEMONSTRATES THE POSITION OF CENTRAL FALLS POLICE CHIEF IS SUBJECT TO PATRONAGE FIRING PROTECTION.

In Otero-Varcalcel v. Cantero-Frau, 124 Fed. Appx. 662, 664 (1st Cir. 2005) the Court held that "the official job description is the best objective evidence of the powers inherent in a given office." That declaration was made under facts wherein a Plaintiff occupied a position in which he **chose** not to exercise the political functions inherent in his employment. At bar, we find a situation where a dominating Mayor/Public Safety Director **would not allow** Plaintiff Wilson to exercise the meager powers assigned to the chief of police.

But, even if Otero-Varcalcel was not easily distinguishable, the testimony of Defendant Moreau in response to questions posed to him regarding the factors outlined in Galloza clearly demonstrates that the attributes of the position of Central Falls police chief (as opposed to the functions of the individual occupying the position) qualifies the position for patronage firing protection. Moreau Tr. II, 3-19-Ex. A. During such

questioning of Defendant Moreau it was made clear that questions posed related to the position of chief of police and not to a particular individual occupying that position. With that caveat, Defendant Moreau, in litany, addressed each of the Galloza factors with responses supportive of the position that Plaintiff Wilson, or any Central Falls police chief, is entitled to patronage firing protection.

## V. EVEN IF THE REMAINING DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY DEFENDANTS BESSETTE AND JOYCE ARE NOT SO ENTITLED BECAUSE THEY ARE NOT PUBLIC OFFICIALS.

"Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official. Gomez v. Toledo, 446 U.S. 635 (1980)." Harlow v. Fitzgerald, 457 U.S. 800, 815 (U.S., 1982).

Neither Defendant Bessette nor Defendant Joyce are public officials.

Defendant Bessette has served only as the unpaid chair of Defendant Moreau's transition team.

```
Q.  That's fine.  Thank you.  Was Mr. Bessette ever
    paid any money to serve on your transition team or
    to act as your advisor?
A.  No.
Q.  Is he an official of the City of Central Falls?
A.  No.
Q.  Is he an employee of the City of Central Falls?
A.  No.
Q.  Since you've been mayor has he ever been either an
    official or employee of the City of Central Falls?
A.  No.
```

Moreau Tr. II, 57.

Defendant Joyce served only as a paid contractor for the city.

```
Q.  Now, during your tenure as mayor has Mr. Joyce,
    other than his contract relationship with the City
    of Central Falls, ever been an employee of the City
```

of Central Falls?
A. Under me?
Q. Yes.
A. No.
Q. Has Mr. Joyce ever been appointed to any other function, role, or position other than his function as a contractor to the City of Central Falls as personnel specialist?
A. No.

Moreau Tr. II, 58.

## VI. THE REMAINING PUBLIC OFFICIALS ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE THEY HAVE OFFERED NO FACTS TO SHOW THAT THEY DID NOT VIOLATE AN ESTABLISHED RIGHT OR THAT THEY ACTED WITH OBJECTIVE REASONABLENESS.

> Federal law provides a cause of action when an individual, acting under color of state law, deprives a person of federally assured rights. See 42 U.S.C. § 1983. Public officials who stand accused of civil rights violations under section 1983 nonetheless can avoid liability for money damages **by showing either that they did not violate a right clearly established under federal law or that they acted with objective legal reasonableness.** n3 [*6] See Harlow v. Fitzgerald, 457 U.S. 800, 819, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982); Buenrostro v. Collazo, 973 F.2d 39, 42 (1st Cir. 1992).(emphasis added)
>
> Camilo-Robles v. Hoyos, 151 F.3d 1, 5-6 (1st Cir., 1998)

Defendants have proven no facts that might be offered to prove that they did not violate the rights of Plaintiffs or that they acted with objective reasonableness. Rather, Defendants argue only that it was not clearly established that the Chief of Police held a non-policymaking position and that, therefore, they should shoulder no liability.

Plaintiffs have previously argued the outrageous nature of the conduct of Defendants and will not

do so again. However, it is obvious, at a minimum, that a jury could reasonably conclude that by any test Defendants did not act in an objectively reasonable fashion.

The assertion that Defendant Moreau did not know that Chief Wilson (and Librarian Shannahan) were entitled to first amendment protection is ridiculous. During his deposition Defendant Moreau volunteered such knowledge and stated he has known about the first amendment since he was in school.

Q. As part of the job functions of the chief of police as opposed to individuals holding the job of chief of police, does the chief as part of his or her duties participate in partisan politics?
MS. NOONAN: Objection.
MR. DESISTO: Objection. You can answer.
A. I think that they can participate in any politics they want, I believe.
Q. What's the basis of that knowledge?
MR. DESISTO: Objection. You can answer.

16

A. I just think the guy is the chief, if there's a chief anywhere if he wants to be involved he can be involved.
Q. Do you know what the First Amendment is, sir?
MR. DESISTO: Objection. You can answer.
Q. The First Amendment to the United States Constitution?
A. Freedom of speech.

<u>Moreau Tr. II, 15-16</u>

The law is clear that public officials are not entitled to qualified immunity protection if they knew or should have known that their actions would violate the constitutional rights of a plaintiff or if malicious

intent was involved.

> Decisions of this Court have established that HN12the "good faith" defense has both an "objective" and a "subjective" aspect. The objective element [**2737] involves a presumptive knowledge of and respect for "basic, unquestioned constitutional rights." Wood v. Strickland, 420 U.S. 308, 322 (1975). The subjective component refers to "permissible intentions." Ibid. Characteristically [***409] the Court has defined these elements by identifying the circumstances in which qualified immunity would not be available. Referring both to the objective and subjective elements, we have held that HN13qualified immunity would be defeated if an official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury . . . ." Ibid. (emphasis added). n25
>
> Harlow v. Fitzgerald, 457 U.S. 800, 815 (U.S., 1982)

At bar a jury could reasonably and easily conclude both that Defendants knew or should have known that the rights of Plaintiffs were violated AND that Defendants acted with malice. A jury should have such an opportunity.

**VI. DEFENDANTS CONTENTION THAT THE RECORD DOES NOT SUPPORT A PATRONAGE FIRING CLAIM IS WRONG. INDEED, THE VERY FACT THAT THERE IS A DISPUTE AS TO WHETHER SUCH FACTS EXIST PROVES THE REQUIREMENT FOR TRIAL.**

This lawsuit is about nonaffiliation—the issue described by the U.S. Supreme Court as being at the core of the landmark patronage firing case. Elrod, 349. Plaintiff alleges that he was constructively discharged because he was not aligned politically with Defendant and his associates.

The record is replete with references to knowledge by Defendant Moreau of Plaintiffs' nonsupport and nonaffiliation with his political organization. Defendants' own Statement of Undisputed Facts offers some insight into Plaintiffs' non-affiliated status. Statement of Undisputed Facts, ¶¶ 11, 14-15 (filed with Motion for Summary Judgment against Plaintiffs Twohig and Shannahan). Defendants themselves

admit to the political activity of Plaintiffs on behalf of the former Mayor. Def. Memo, 21. (filed with Motion for Summary Judgment against Plaintiffs Twohig and Shannahan).

Even prior to his inauguration, Defendant Moreau announced that he planned to remove public employees associated with the prior administration. Exhibit F, Plaintiff's Memo in Support of Objection to Motion for Summary Judgment Against Plaintiffs Twohig and Shannahan..

And, quite obviously, the mayor's obsession with rooting out individuals affiliated with the prior administration is evidenced by Defendants' fanatical raid on the Central Falls library for the admitted purpose of obtaining political literature thought to be on the library's computers and to discover individuals responsible for putting such literature there. If there was no other evidence as to the obsessed motivation of Defendant Moreau and his minions, the library raid itself would prove such

As contended by Defendants, Plaintiffs must only show that affiliation or nonaffiliation was a "**substantial or motivating**" factor in the conduct of Defendants. "To establish a prima-facie case, a plaintiff must show that party affiliation was a substantial or motivating factor behind a challenged employment action." Mercado-Alicea v. P.R. Tourism Co., 396 F.3d 46, 51 (1st Cir., 2005). Thereupon the burden shifts to Defendants to justify their actions.

Obviously, it is impossible for Plaintiffs to enter the psyche of Defendants, particularly principal Defendant Moreau, to determine and prove the precise nature of motivation and whether the political status of Plaintiffs was "substantial". It is highly improbable that any Defendant would admit that he was motivated by considerations of nonaffiliation under the circumstances of this case. And, absent the presence of the proverbial "fly on the wall", the only way any public employee might prove a patronage firing case is to show circumstantially that nonaffiliation is the probable reason for the conduct of Defendants.

Plaintiffs have met their burden by adducing evidence that Plaintiff was identified with the prior

administration and remained nonaffiliated with the new administration, that Defendant Moreau did not trust Plaintiff because he was associated with the prior administration and that Defendant Moreau intended to "clean house" even before he became Mayor, that there was no logical or rational basis for treating Plaintiff as he was treated and that only nonaffiliated public employees were singled out for such treatment.

It is for the trier of fact to determine if these facts amount to nonaffilation as the substantial or motivating factor behind the conduct of Defendants. To conclude otherwise is to eviscerate the patronage firing doctrine by making it virtually impossible for a Plaintiff to prove a case because of the impossibility of probing the inner most, subjective thoughts of Defendants.

Plaintiffs have clearly demonstrated the contextual basis for the conclusion that nonaffiliation was a substantial **OR** motivating factor for the conduct of Defendants

A jury could easily find that nonaffiliation was the motive for Defendants' actions against Plaintiffs based: 1) upon the political differences between Plaintiffs and Defendants firmly established in the record, 2) upon the total absence of any reasonable and rational basis for Defendants' singling out Plaintiffs' for harassment and punishment, and 3) upon the fact that the personnel actions taken by Defendants were **ONLY** visited upon individuals who were associated with the prior administration and who were nonaffiliated with the new administration.

Alternatively, it might be reasonably viewed that Plaintiffs have proven the political motivation given the low standard of preponderance of the evidence applied here. A jury might reasonably conclude that given the facts admitted by Defendants there is no other possibility than the political motivation of Defendants.

## VII. DEFENDANTS OFFER ABSOLUTELY NO CASE LAW TO SUPPORT THEIR CONTENTION THAT MONEY DAMAGES ARE NOT AVAILABLE BASED UPON VIOLATION OF A MUNICIPAL CHARTER.

In their original motion papers Defendants argued that there is no private cause of action stemming from violations of a municipal charter. Confronted by Plaintiffs in their response with several cases in which individuals have brought actions over charter violations, Defendants have now retreated to contending that money damages are unavailable.

This modified iteration is as wrong as its predecessor. The Central Falls City Charter provides unequivocally that city employees can be fired only for just cause. C.F. City Charter, Sec. 7-101. Is such a provision merely for decoration without an implied cause of action to obtain damages if it is violated? How could it be that a basic governmental document such as a city charter could confer rights without a means of redressing those rights by obtaining monetary compensation?

A recent Rhode Island Supreme Court case involving the firing of a police chief holds contrary to the Central Falls position.

> When construing a municipal charter, the usual rules of statutory construction apply." Providence Teachers Union Local No. 958 v. Napolitano, 554 A.2d 641, 643 (R.I. 1989); see also Coventry School Committee v. Richtarik, 122 R.I. 707, 713, 411 A.2d 912, 915 (1980). HN13"It is the accepted rule that the provisions of city charters should be construed so as to give, so far as possible, reasonable meaning and effect to all parts of the section in question. Further, the words used therein should be given their usual and ordinary meaning." Carter v. City of Pawtucket, 115 R.I. 134, 138, 341 A.2d 53, 56 (1975).
>
> Kells v. Town of Lincoln, 874 A.2d 204 (R.I., 2005)

In Kells the Plaintiff had no lost time damages and was not subjected to constructive termination as in the case at hand. However, the Court did allow and order payment of attorney's fees to Plaintiff's counsel—certainly a form of monetary damages and a remedy Defendants contend is not available in Rhode Island.

### *Conclusion*

Defendants have failed to show that they are entitled to judgment as a matter of law based upon undisputed facts. Defendants are unable to meet that burden because the core issues in this case remain to be decided by a jury.

Plaintiffs have brought before the Court sufficient facts that, if proven before a trier of fact, will result in judgment. This is a complicated case with multiple causes of action, multiple plaintiffs and multiple defendants. The entire case should be allowed to proceed to trial. Let the parties offer their evidence. Let the jury decide.

RESPECTFULLY SUBMITTED,
PLAINTIFFS
By Their Attorneys,

Sara M. Quinn, Esq. #2798
QUINN & QUINN, L.L.P.
260 West Exchange Street
Suite 310
Providence, Rhode Island 02903
(401) 274-3000
(401) 274-3074 (fax)

Leon A. Blais, Esq.
Blais & Parent
Cabot Business Park
20 Cabot Boulevard
Mansfield, MA 02048
(508) 618-1280
(617) 812-0459 (fax)

**Certificate of Service**

I, Leon Blais, herewith certify that on July 8, 2005 I mailed a copy of this document to counsel indicated below by first class mail:

Elizabeth Noonan, Esq.
Adler, Pollack and Sheehan
8th Floor
One Citizens Plaza
Providence, RI 02903

Marc DeSisto, Esq.
211 Angell Street
Providence, RI 02906

Leon Blais