UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THOMAS WILSON, et al
Plaintiffs

vs. C.A. No. 03-575L

CHARLES D. MOREAU, et al
Defendants

**DEFENDANTS' PRETRIAL MEMORANDUM**

*I. Introduction*

This case began as a twelve (12) count Complaint by four (4) plaintiffs against nine (9) defendants. Upon the completion of discovery, all named defendants filed motions for summary judgment on all counts. On August 4, 2006, this Court issued an eighty (80) page decision granting summary judgment on the majority of claims. The only outstanding claims for trial are the § 1983 patronage firing claim against Mayor Moreau by plaintiff Donald D. Twohig (hereinafter "Donald D.") and the § 1983 claim for unlawful search and seizure and state computer trespass law claims by his father, Donald P. Twohig's (hereinafter "Donald P.") against the Mayor and two (2) police officers.

*II. Facts Expected to be Proven in Defense*

A. Donald D.'s § 1983 Patronage Firing Claim

In defense of Donald D.'s patronage firing claim, the Mayor expects to prove not only that Donald D.'s political affiliation had nothing to do with the employment decisions but that the Mayor, in any event, had absolutely no input or participation in these employment decisions. From May 1, 2004 until May 21, 2004, former defendant

Albert Cardona served as the interim Library Director. On or about May 21, 2004, Julia Iacono, who is not a defendant in this matter, was appointed Library Director. Defendants expect to prove at trial that Ms. Iacono, who ultimately took the disciplinary actions against Donald D., disciplined Donald D. because she perceived him to be undermining her authority and interfering with her running of the library. After several disciplinary warnings, Ms. Iacono made the decision to terminate Donald D. from his position with the library. Mrs. Iacono will testify that the Mayor did not tell her to discipline or fire Donald D. and that she made this decision based on her view of his performance. Mrs. Iacono will specifically testify that when she did complain to the Mayor about Donald D., the mayor expressly refused to become involved and told her that as the Director it was her job to handle it.

Defendant expects to further prove that Donald D.'s alleged political affiliation in any event had no connection to Mrs. Iacono's employment decisions. In fact, although Donald D. was hired by former Mayor Matthews in the fall of 2003 to create a website for the Mayor's reelection bid, Donald D. himself testified that he did not otherwise support either former Mayor Matthews or Mayor Moreau during the 2003 election. *Id. at 25.*

B. Donald P.'s § 1983 Fourth Amendment and R.I. Computer Crimes Act

Donald P., meanwhile, seeks to maintain a claim under § 1983 and R.I. Computer Crimes Act for the alleged unlawful search and seizure of his email account on April 20, 2004. In defense of this claim, defendants expect to prove that prior to that date, Mayor Moreau received information from former Mayor Lazieh that library staff and resources had been used in support of the mayoral campaign of Mayor Matthews. Accordingly, co-

defendant Robert Luke,[1] a computer technician for IT Systems who performed general technical work on the City computers, was sent to check the library computers for evidence of such campaign materials. Officer Mark Brayall accompanied Mr. Luke. Defendants expect to prove that upon arriving at the library, Mr. Luke and Officer Brayall encountered Donald P., who has worked for a period of time at the library as an independent contractor overseeing construction projects, working on one of the computers. Defendants expect to prove that after Officer Brayall explained to Donald P. what Mr. Luke was there for, Donald P. called Mr. Shannahan, the Library Director and then showed Mr. Luke what he was working on on the computer. According to Donald P., Mr. Luke looked at his email account for a few minutes and then stated that there was nothing but junk email there. Mr. Luke and Officer Brayall moved on to his son's computer. *Deposition of Donald P. Twohig, March 31, 2005, at 62.* Lt. Guindon was not present during the inspection of Donald P.'s email.

Both Mr. Luke and Officer Brayall expressly deny that Donald P. was threatened with arrest if he did not turn over his password to his email account. In fact, Donald P. further testified that during this same time frame he contacted the librarian, Thomas Shannahan to inform him about the police presence. Mr. Shannahan told Donald P. to give them what they wanted because they had nothing to hide. *Id.* Defendants thus intend to prove that Donald P. consented to the inspection of his email account by Mr. Luke. Defendants further intend to prove that no emails on Donald P.'s account were interfered with or deleted by Mr. Luke.

---

[1] Mr. Luke has settled the claims against him and been dismissed from the instant suit.

*III. Claims and Defenses*

A. Patronage Firing – Donald D.

Donald D.'s claim against Mayor Moreau is based on a perceived violation of his First Amendment rights. Pursuant to the First Amendment, certain individuals possess the right to be free from discrimination on account of their political opinions or beliefs. *LaRou v. Ridlon, 98 F.3d 659, 661 (1st Cir. 1996).* In the context of public employment, this transgresses into the recognition that as a general rule, a government employer cannot discharge a non-policymaking public employee "merely because they are not sponsored by or affiliated with a particular political party." *Galloza v. Foy, 389 F.3d 26, 28 (1st Cir., 2004) citing Elrod v. Burns, 427 U.S. 347, 350 (1976).*

In order to maintain a claim of political discrimination, plaintiffs must satisfy a two-part, burden-shifting standard**.** Plaintiffs must first establish a prima-facie case by showing that party affiliation was a substantial or motivating factor behind a challenged employment action. *Mercado-Alicea v. P.R. Tourism Co., 396 F.3d 46 (1st Cir., 2005).* In "[p]roving that . . . political affiliation was a substantial or motivating factor in the adverse decision requires more than 'merely juxtaposing a protected characteristic-someone else's politics-with the fact that the plaintiff was treated unfairly.'" *Vazquez-Valentin v. Santiago-Diaz, 385 F.3d 23, 38 (1st Cir., 2004) (quoting Correa-Martinez, 903 F.2d at 58).* If plaintiff meets his burden of proving a prima facie case of unlawful discrimination**,** the burden then shifts to the defendant, who must establish, by a preponderance of the evidence, that he would have taken the same action regardless of the plaintiff's political beliefs. *Mercado-Alicea, 396 F.3d at 46.*

In the instant case, it is first noteworthy that Mrs. Iacono, the former library director was the individual who made the adverse employment actions. Mrs. Iacono is not a party to this suit. In addition, Mrs. Iacono testified that she made all employment decisions on her own based on her perception of plaintiff's actions, without direction or pressure from the Mayor. Accordingly, there is no support in the first instance that the Mayor took any action in violation of plaintiff's First Amendment rights. In addition, the only evidence relied upon by plaintiff to support the conclusion that his political affiliation was a substantial or motivating factor behind the alleged adverse action is the fact that the Mayor initiated an investigation into whether plaintiff misused library resources in support of the former mayor's campaign. However, negating such a motivation is the fact that such misuse of library resources clearly would have been in violation of the local ordinances. *Central Falls Charter, Sec. 8-107. ("No officer or employee of the city shall use city property for private purposes; and no officer or employee of the city shall use public facilities for the purpose of conducting private business").* Defendant thus submits that this allegation is insufficient to support a finding that the Mayor violated Donald junior's First Amendment rights.

B. Fourth Amendment – Donald P.

Donald P. brings a claim under the Fourth Amendment and the Rhode Island Computer Crime Act, *R.I.G.L. § 11-52-3 & 11-52-4.1* for damages stemming from the inspection of his email account. Under the Fourth Amendment, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. *United States v. Benezario, 339 F. Supp. 2d 361, 366 (D.P.R.,*

*2004) (citations omitted).* What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *U.S. v. Montoya Hernandez, 473 U.S. 531 (1985); see also New Jersey v. T.L.O., 469 U.S. 325 (1985).* In addition, to assert a right under the Fourth Amendment, and as this Court recognized, "[i]f a court finds that there was a subjective expectation of privacy and that society would concur that such expectation is a reasonable one, then the next step is to assess the reasonableness of the search itself." *Wilson v. Moreau, 2006 U.S. Dist. LEXIS 55310 (D.R.I. 2006).* In this case, this Court has held that Donald P. had a reasonable expectation of privacy in his personal Yahoo e-mail account. *Wilson v. Moreau, 2006 U.S. Dist. LEXIS 55310 (D.R.I. 2006).* This Court has also held that the "search" was unreasonable "per se." The question thus becomes whether the officers conducted the search and/or whether Donald P. nevertheless consented to the same. Defendants submit that not only Donald P. voluntarily consented to Mr. Luke's inspection of his computer.

Defendants further submit that this consent by Donald P. negates his claim under the Rhode Island Computer Crime Act. That is, §§ 11-52-3 and 11-52-4.1 of R.I. General Laws likewise require a finding that the defendants acted "without authority."[2] In

---

[2] Section 11-52-3 of R.I. General Laws specifically provides

> Whoever, intentionally and without authorization, directly or indirectly, accesses, damages or destroys any computer, computer system, computer network, computer software, computer program, or data contained in a computer, computer system, computer program, or computer network shall be guilty of a felony and shall be subject to the penalties set forth in § 11-52-5.

Section 11-52-4.1, meanwhile states that it is unlawful "for any person to use a computer or computer network *without authority and with intent* to" perform certain delineated acts that effectively interfere with the owners use of the computer. *R.I.G.L. § 11-52-4.1 (emphasis added).*

addition, in order to maintain a claim under *R.I.G.L. § 11-52-4.1,* plaintiffs must demonstrate an intent to permanently deprive the owner of access to same by removing the same or altering or erasing the data. In this case, the evidence is that the Mayor simply told Mr. Luke (who has settled this suit) to inspect the computer for evidence of misuse. Even assuming that Mr. Luke did delete the email as claimed by Donald P., there is no evidence to support the claim that Mr. Luke either intended himself to delete the same or that, more specifically the Mayor or the police officers possessed such an intent or took such action.

*IV. Exhibits*

None other than those to be used by plaintiffs.

*V. Potential Witnesses*

Mayor Charles Moreau – in addition to denying all the allegations against him, circumstances giving rise to his direction to Mr. Luke to inspect the library computers, his actual instructions to Mr. Luke, and his lack of involvement in the disciplinary actions taken against Donald D.

Mark Brayall – in addition to denying all the actions against him, circumstances and events surrounding Mr. Luke's inspection of Donald P.'s computer.

Kevin Guindon – in addition to denying all the actions against him, his lack of involvement in the inspection of Donald P.'s email account.

Robert Luke – actions taken with regard to the inspection of Donald P.'s email account.

Julia Iacono – disciplinary actions taken against Donald D., the reasons for the disciplinary actions including denying that Donald D.'s political affiliation played

any part in her decisions and Mayor Moreau's lack of involvement regarding the same.

Alberto Cardona – interaction with Donald D., the reasons for the interactions including denying that Donald D.'s political affiliation played any part in her decisions and Mayor Moreau's lack of involvement regarding the same.

*VI. Proposed Jury Instructions*

In addition to the Court's general jury instructions and general instructions on *§ 1983* claims, Defendants hereby propose the following additional instructions.

**A. First Amendment**

1. As a general rule, a government employer cannot discharge a non-policymaking public employee "merely because they are not sponsored by or affiliated with a particular political party." *Galloza v. Foy, 389 F.3d 26, 28 (1st Cir., 2004) citing Elrod v. Burns, 427 U.S. 347, 350 (1976).*

2. In order to maintain a claim of political discrimination, plaintiff must satisfy a two-part, burden-shifting standard**.** Plaintiffs must first establish a prima-facie case by showing that his political party affiliation was a substantial or motivating factor behind a challenged employment action. *Mercado-Alicea v. P.R. Tourism Co., 396 F.3d 46 (1st Cir., 2005).*

3. In "[p]roving that . . . political affiliation was a substantial or motivating factor in the adverse decision requires more than "simply . . . asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus." *Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 53 (1st Cir. 1990); See also Vazquez-Valentin v. Santiago-Diaz, 385 F.3d 23, 38 (1st Cir., 2004) (quoting Correa-Martinez, 903 F.2d at 58).*

4. Thus, even if you "reasonably infer that defendants knew that plaintiff was a member of the [opposing party], that still is insufficient" as a matter of law to support the conclusion that plaintiff's First Amendment rights were violated. See *Vazquez-*

Valentin, *385 F.3d at 38.* Rather, plaintiff must further demonstrate that it was a substantial or motivating factor behind the adverse decision.

5. However, "even if a plaintiff meets his . . . initial burden of showing that political affiliation was a motivating factor for an employment decision, that is [still] insufficient to establish discrimination as a matter of law because the plaintiff's case at that point does not 'distinguish[] between a result caused by a constitutional violation and one not so caused.'" *Mercado-Alicea v. P.R. Tourism Co., 396 F.3d 46, 51 (1st Cir. 2005)(citations omitted).*

6. Rather, if plaintiff meets his burden of proving a prima facie case of unlawful discrimination, the burden then shifts to the defendant, who must establish, by a preponderance of the evidence, that he would have taken the same action regardless of the plaintiff's political beliefs. *Mercado-Alicea, 396 F.3d at 46.*

**B. Fourth Amendment**

1. Under the Fourth Amendment, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. *United States v. Benezario, 339 F. Supp. 2d 361, 366 (D.P.R., 2004) (citations omitted).*

2. What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *U.S. v. Montoya Hernandez, 473 U.S. 531 (1985); see also New Jersey v. T.L.O., 469 U.S. 325 (1985).*

3. In this case, I instruct you that I have already determined as a matter of law that Donald P. had a reasonable expectation of privacy in his personal Yahoo e-mail

account and thus the search is "per se unreasonable". *Wilson v. Moreau, 2006 U.S. Dist. LEXIS 55310 (D.R.I. 2006).*

4. However, despite this instruction, defendants are not liable if you find that plaintiff consented to the search. That is because consent is an exception to the warrant requirement. *Id.*

5. I further instruct you that under the Central Falls Charter, it is unlawful for any "officer or employee of the city [to] use city property for private purposes; and no officer or employee of the city shall use public facilities for the purpose of conducting private business." *Central Falls Charter, Sec. 8-107.*

**C. Rhode Island Computer Crime Act**

1. Plaintiff also claims that the inspection of his email account amounted to a violation of the Rhode Island Computer Crime Act. I instruct you that similar to plaintiff's constitutional claim, pursuant to the Crimes Act, you must likewise find that the defendants acted without authority or without plaintiff's consent.

2. In addition, in order for your to find that defendant's violated *§ 11-52-4.1* of the act, plaintiff must demonstrate that defendants' intended to permanently deprive him of access to the computer account by removing the same or altering or erasing the data.

*VII. Probable Length of Trial*

Defendants estimate that their presentation of evidence in this matter will last approximately one (1) day and the total trial time will be approximately three (3) days.

Defendants, Charles D. Moreau,
Kevin Guindon and Mark Brayall
By their Attorneys,

/s/Marc DeSisto
Marc DeSisto (#2757)
Michael A. DeSisto (#2444)
DESISTO LAW
211 Angell Street
Providence, RI 02906
(401) 272-4442
(401) 272-9937 facsimile
michael@desistolaw.com

Defendant, Charles D. Moreau,
Kevin Guindon and Mark Brayall
By their Attorneys,

/s/Elizabeth McDonough Noonan
Elizabeth McDonough Noonan (#4226)

Adler Pollock and Sheehan, P.C.
2300 Financial Plaza
Providence, Rhode Island 02903
(401) 274-7200
(401) 351-4607 facsimile
Bnoonan@apslaw.com

CERTIFICATION OF SERVICE

I hereby certify that a true copy of the within document has been filed electronically on this 5th day of September and is available for viewing and downloading from the ECF system.

/s/ Marc DeSisto

Sara M. Quinn, Esq.
Quinn & Quinn, LLP
260 West Exchange Street, Suite 310
Providence, Rhode Island 02903

Leon A. Blais, Esq.
Blais & Parent
Cabot Business Park
20 Cabot Boulevard
Mansfield, MA 02048