# United States Court of Appeals
## For the First Circuit

No. 06-2630

THOMAS WILSON; DONALD P. TWOHIG;
DONALD D. TWOHIG; THOMAS SHANNAHAN,

Plaintiffs, Appellants,

v.

CHARLES D. MOREAU, individually and as Agent for the City of Central Falls; JOHN KUZMISKI, in his capacity as Finance Director and Treasurer of the City of Central Falls; RICHARD B. BESSETTE, individually and in his capacity as Agent for the City of Central Falls; MARTIN JOYCE, individually and as Acting Personnel Specialist for the City of Central Falls; RAYMOND COONEY, individually and in his capacity as City Solicitor for the City of Central Falls; ALBERTO CARDONA, individually and in his capacity as Agent for the City of Central Falls; KEVIN GUINDON, individually and in his official capacity as a Police Officer for the City of Central Falls; MARK BRAYALL, individually and in his official capacity as Police Officer for the City of Central Falls,

Defendants, Appellees.

ROBERT LUKE, individually and in his capacity as an employee of IT Systems, LTD; IT SYSTEMS LTD., a Rhode Island Corporation,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, Senior U.S. District Judge]

Before

Boudin, Chief Judge,

Howard, Circuit Judge,

and Saylor,* District Judge.

---

Leon A. Blais with whom Blais and Parent was on brief for appellants.

Marc DeSisto with whom DeSisto Law, Elizabeth McDonough Noonan and Adler Pollock & Sheehan, P.C. were on brief for appellees.

---

June 29, 2007

---

*Of the District of Massachusetts, sitting by designation.

BOUDIN, Chief Judge. In the district court, the plaintiffs--all former employees or contractors of the City of Central Falls, Rhode Island--made claims relating to their employment with the city. Thomas Wilson was the Police Chief, Thomas Shannahan was the Director of the Library, Donald D. Twohig ("Donald D.") was the Systems Administrator of the Library, and Donald P. Twohig ("Donald P."--Donald D.'s father) was an independent contractor who worked on library projects for over ten years.

Judge Lagueux's opinion on summary judgment contains a detailed description of the facts. Wilson v. Moreau, 440 F. Supp. 2d 81 (D.R.I. 2006). Pertinently, Charles Moreau was elected mayor in November 2003. The mayor had earlier stated that, if elected, he would fire Wilson. Once elected, the mayor embarrassed Wilson on several occasions, including, for example, requiring Wilson to turn in his city-owned vehicle and accept an old, rusted car as a replacement. Wilson was suspended with pay and eventually resigned after refusing to pursue an investigation into alleged misuse of library resources.

During the election, Donald P. donated $100 to Moreau's opponent and put up lawn signs. Shannahan had been approached by Moreau prior to the election, but declined to support either candidate for mayor. Allegedly in response to perceived support

for his opponent on the part of library staff, the new mayor began an investigation into the operations of the library.

During this period, payment due to Donald P. for renovation work already completed was delayed for seven weeks. The mayor also required competitive bidding for all work over $500, which effectively cut off Donald P.'s access to non-bid work. Shannahan announced his resignation on April 12, 2004, effective at the end of April. Donald D. was initially demoted by an interim librarian and later suspended and fired by the newly appointed library director; he filed a grievance, which was upheld, but he appears to have found employment elsewhere.

On April 20, 2004, police detectives and a computer technician went to the library, obtained Donald D.'s password to the internal library system and looked through the library's computer files. The "raid," at Mayor Moreau's direction, was to determine whether library resources had been used to support his opponent during the election. According to Donald P., he was ordered to provide the password to his personal Yahoo account, and his personal emails were then searched.

The plaintiffs then filed a lawsuit in federal court against the mayor, members of his administration, the two police detectives involved in the search, and the computer technician and his company who aided the search. Most of the claims were dismissed on summary judgment, but several went to trial; of these,

several were thereafter dismissed on a Rule 50(a) motion, Fed. R. Civ. P. 50(a); two remaining claims went to the jury, which rejected them on the merits.

On plaintiffs' appeal to this court, we rely primarily on Judge Lagueux's thoughtful and thorough opinion, addressing only those issues that have been preserved. Dismissals on summary judgment and under Rule 50 are reviewed de novo, taking the evidence most favorably to the opposing party; in the former case we ask whether there is a genuine issue of material fact; in the latter, whether a rational jury could find in favor of the party opposing dismissal.[1]

All four plaintiffs brought first amendment claims under Elrod v. Burns, 427 U.S. 347, 360 (1976), asserting that they had been subjected to dismissal for their political affiliation. This protection does not apply to policymaking employees whose political affiliation is pertinent to their positions. Id. at 367. The district court found that the suspensions imposed on Wilson constituted an adverse employment action but dismissed Wilson's claim on the ground that he held a policy position. Wilson, 440 F. Supp. 2d at 94-96.

---

[1]Johnson v. Gordon, 409 F.3d 12, 16-17 (1st Cir. 2005); Burton v. Town of Littleton, 426 F.3d 9, 14 (1st Cir. 2005). The district court said that, in certain respects, the plaintiffs had failed to comply with local specificity requirements for the filing of a statement of disputed facts. We bypass this issue because, taking the plaintiffs' allegations as they stand, the result is no different.

On this appeal, Wilson says that he was not really a policy maker: that he was subject to supervision by the public safety director (the mayor), had technical expertise, got modest pay ("57" per year), had civil service protection under the city charter, was not in fact given effective authority by the mayor, and was treated badly. But most of these "facts"--which we assume arguendo--are not highly relevant, and the core issue--the authority attaching to Wilson's position--is decisive.

Under the city charter, the police chief was in charge of the division, and the basic operation and discipline of the police was in the chief's hands. City of Central Falls, Charter, § 4-701. The job description is normally of foremost importance, Jimenez Fuentes v. Torres Gaztambide, 807 F.2d 236, 242 (1st Cir. 1986), cert. denied, 481 U.S. 1014 (1987), and a police chief is ordinarily high ranking enough to make or influence policy. See Galloza v. Foy, 389 F.3d 26, 28-30 (1st Cir. 2004); Flynn v. City of Boston, 140 F.3d 42, 44-45 (1st Cir.), cert. denied, 525 U.S. 961 (1998).

Whether Wilson had civil service protection does not matter; Wilson's claims under the city charter have not been preserved on this appeal. Policymaking officials often have technical expertise as well and often report to a yet higher ranked official. Flynn, 140 F.3d at 46. That the mayor may have acted badly and out of private motives also does not matter: because

Wilson is not protected under Elrod v. Burns, he has no first amendment claim.

Shannahan said he was constructively discharged but the district court held otherwise, ruling that hostile statements by the mayor were not enough. Wilson, 440 F. Supp. 2d at 102. We agree that the mayor's criticisms did not constitute "working conditions imposed by the employer . . . so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign."[2] The library "raid," to which Shannahan also points, occurred after he told the city council that he was resigning.

Donald P. also claimed violation of his first amendment rights, pointing to new city bidding and insurance requirements for contracts of $500 or more. The defendants offered a plausible explanation for such requirements, which are hardly uncommon; Donald P. pointed only to proof that he had erected some campaign signs for the former mayor and donated a modest amount of money. This is simply not enough to establish that the general requirements for contractors were political revenge against him. Mercado, 396 F.3d at 51.

---

[2]Mercado-Alicea v. Puerto Rico Tourism Co., 396 F.3d 46, 52 (1st Cir. 2005) (quoting Suarez v. Pueblo Intern., Inc., 229 F.3d 49, 54 (1st Cir. 2000)); see also Reed v. MBNA Marketing Systems, Inc., 333 F.3d 27, 33 (1st Cir. 2003) (constructive discharge requires "harassment so severe and oppressive that staying on the job while seeking redress--the rule save in unusual cases--is 'intolerable'").

Both Donald P. and Donald D. made state-law defamation claims. Donald P.'s claims centered on statements attributed to Moreau which concerned Donald P.'s status as a convicted felon and his receipt of large payments under non-bid contracts for library work. As to Donald D., the mayor had reportedly said that Donald D. had deleted some computer files during the library search and that he had produced campaign materials at the library.

But under Gertz v. Robert Welch, Inc. 418 U.S. 323 (1974), even a "private" defamation plaintiff must show actual injury unless factual statements were made with knowledge that they were false or with reckless disregard for their truth. The district judge found no evidence of either actual injury or the required scienter. Wilson, 440 F. Supp. 2d at 113-14. On appeal, Donald D. and Donald P. say that their factual assertions were ignored but point to no evidence--as opposed to conclusory assertions-- to establish either defendant's scienter or their own actual damages.

Donald D. and Donald P. also brought state law privacy claims. The district court dismissed those claims because inter alia plaintiffs had failed to set forth any specific facts demonstrating that plaintiffs satisfied the requirements of the statute. Wilson, 440 F. Supp. 2d at 115. This deficiency persists on appeal; the plaintiffs merely assert that a privacy claim could

be based on the same facts alleged with respect to the defamation claim.

Several claims went to trial: Donald D.'s claim of patronage firing as against Moreau; Donald P.'s fourth amendment claims against the mayor and the police officers; and Donald P.'s state law computer crime claims against the mayor and the police officers. After plaintiffs' evidence was submitted, the district judge granted Moreau's Rule 50(a) motion to dismiss both Donald D.'s patronage firing claim and Donald P.'s claims under the Fourth Amendment and state law computer crimes.

The two remaining claims (Donald P.'s fourth amendment claim and computer-law claim against the police detective based on the library search) were submitted to the jury, and the jury returned verdicts in favor of the police detective. As a predicate to these latter claims, the jury was asked whether the computer technician who had done the actual searching had in fact searched Donald P.'s personal e-mail. Whether there had been a true search had been disputed at trial. The jury answered no.

On appeal, the plaintiffs say that the claims against Moreau based on the search should not have been dismissed; they argue that even if Moreau did not participate in the search he could himself have been held liable on a theory of supervisory liability. They also state that the judge should have instructed on "presumed damages" as to the search. But since the jury verdict

established that there had been no search of personal emails, both issues are moot.

In the district court, the plaintiffs sought recovery on other claims, not discussed above, some of which are pursued on this appeal; but such claims have not been adequately developed or are raised only in the plaintiffs' reply brief and in either event are forfeit. Mass. Sch. of Law v. Am. Bar Ass'n, 142 F.3d 26, 43 (1st Cir. 1998); Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 354 (1st Cir. 1992).

Affirmed.